IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

04 APR -5 AM 11: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JIMMIE BRADEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-PT-0235-E |
| | ) | |
| | ) | |
| WYETH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED
APR 5 2004

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Jimmie Braden's ("Braden") Motion to

Remand, filed on February 11, 2004, and defendant Wyeth's Motion to Stay to Allow Transfer to

the Multi-District Litigation Proceeding, filed on February 18, 2004.

## FACTS AND PROCEDURAL HISTORY

Braden is a resident of Calhoun County, Alabama. *See* Compl. ¶ 2. Defendant Wyeth[1] is

a corporation organized and existing under the laws of Delaware with its principal place of business

in New Jersey. *Id.* at ¶ 3. Wyeth does business in the State of Alabama. *Id.* At all relevant times,

plaintiff alleges, Wyeth "was in the business of promoting, marketing, manufacturing and

distributing the diet drugs fenfluramine (also known as Pondimin) and dexfenfluramine (also known

as Redux) in the State of Alabama." *Id.* at ¶¶ 2-3. At all relevant times, defendants Anthony L.

Cherry ("Cherry") and Ben E. Lavender, Jr. ("Lavender") were Wyeth sales representatives residing

---

[1] Wyeth is the successor corporation to American Home Products Corporation, Wyeth-
Ayerst Laboratories Division of American Home Products Corporation, and A.H. Robins
Company, Inc. *Id.* at note 1.

in Alabama. *Id.* at ¶ 4.

On January 6, 2004, Braden filed a complaint in the Circuit Court of Calhoun County, Alabama, against defendants Wyeth, Cherry, Lavender, and fictitious parties. In the complaint, plaintiff alleged that she suffered from a variety of health problems (including heart and pulmonary injuries) as a result of ingesting Pondimin and/or Redux. *Id.* at ¶¶ 11, 56, 65, 70, 76, 82, 93, 96. The complaint contained the following claims against defendants: Count I (Alabama Extended Manufacturer's Liability Doctrine); Count II (Failure to Warn); County III (Breach of Warranty of Merchantability); Count IV (Negligence); Count V (Wantonness); Count VI (Fraud, Misrepresentation and Suppression); and Count VII (Fictitious Parties).

On February 5, 2004, Wyeth filed a notice of removal pursuant to under 28 U.S.C. § 1332, alleging "complete diversity of citizenship . . . between the properly joined parties" and an amount in controversy exceeding $ 75,000.00. Wyeth's Notice of Removal contended that the only non-diverse defendants – Wyeth sales representatives Cherry and Lavender, whom plaintiff alleges marketed, promoted, sold and/or distributed Pondimin and/or Redux – were fraudulently joined. Relying on *Triggs v. John Crump Toyota,* Inc., 154 F.3d 1284 (11th Cir. 1998) and *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1360 (11th Cir. 1996), Wyeth argued: "[T]here is no reasonable possibility that plaintiff can prevail on her claims against the Sales Representatives. Thus, they have been fraudulently joined, and their citizenship must be disregarded for purposes of determining jurisdiction."[2]

---

[2] *Tapscott*, the court notes, found fraudulent joinder in a case where misjoinder of defendants without any real connection with the controversy occurred. Additionally, *Tapscott* stated: "This Circuit has previously recognized two situations where joinder is fraudulent: (1) if there is no possibility the plaintiff can prove a cause of action against the resident defendant; or (2) if there has been outright fraud by the plaintiff in pleading jurisdictional facts. *Coker*, 709

## STANDARD FOR MOTION TO REMAND

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to diversity of party citizenship or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, removal cannot be based on diversity if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

---

F.2d at 1440 (citations omitted)."

## ARGUMENTS

## MOTION TO REMAND

**I.    Plaintiff's Motion[3]**

**A.    <u>Introduction</u>[4]**

According to Braden, this case has been improperly removed from the Calhoun County

Circuit Court, as Wyeth's notice of removal failed to demonstrate fraudulent joinder and/or

fraudulent misjoinder.  Plaintiff accuses Wyeth of seeking removal as a way "to create a substantial

delay in the litigation process by, inevitably, seeking transfer to the U.S. District Court for the

Eastern District of Pennsylvania, the MDL court for Fen-Phen cases under federal jurisdiction."

Plaintiff asserts that she has alleged several viable causes of action against the Alabama resident

---

[3] Braden requests remand pursuant to 28 U.S.C. §1447(c).

[4] Braden supplies a brief history of the drugs at issue, Pondimin and Redux, noting that Pondimin combined with phentermine was commonly referred to as "Fen-Phen."  A *New England Journal of Medicine* report linked the drugs to serious injuries, including pulmonary hypertension ("PH"), primary pulmonary hypertension ("PPH"), and valvular heart disease ("VHF").  This report prompted the FDA's September 1997 removal of Pondimin and Redux from the consumer marketplace.

As early as 1991, Braden avers, Wyeth knew of an increased incidence of severe and fatal cases of PH and PPH caused by Pondimin and/or Redux, and by 1995 Wyeth also knew of an increased risk of VHD.  As a result of ingesting Pondimin and/or Redux, plaintiff alleges, she suffered injury to her heart and pulmonary system.

Through Wyeth's sales force, including Cherry and Lavender, plaintiff argues, Wyeth undertook an overly aggressive marketing campaign for the diet drugs which overstated the drugs' benefits and severely downplayed their risks.  Braden contends: "At the time that Wyeth's sales representatives lured the Plaintiff's physicians into prescribing the pills, its sales representatives were the Plaintiff's 'last line of defense' so-to-speak (*i.e., the last person who could warn the prescribing physician of the true risks of the drugs*).  The sales representative defendants, however, failed to take any such action and committed tortious acts against the Plaintiff by agreeing to help Defendant Wyeth promote these dangerous diet drugs."

4

defendants.

Federal judges in both the Middle and Northern Districts of Alabama, plaintiff points out, have ruled on identical issues within the last 120 days, finding Wyeth failed to prove fraudulent joinder and/or misjoinder against sales representative defendants. *See Floyd, et al v. Wyeth, et al.*, CV03-C-2564-M (N.D. Ala. Oct. 20, 2003)(ordering remand on the identical issue presented currently as asserted against Wyeth sales representative defendants). *See also Crittendon, et al. v. Wyeth, et al.*, CV-03-T-920-N (M.D. Ala. Nov. 21, 2003); *Storey v. Wyeth, et. al*, CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004); *Ballard v. Wyeth, et al.*, 03-T-1255-N (M.D. Ala. Jan. 23, 2004); *Blair et al v. Wyeth, et al.*, 03-T-1251-S (M.D. Ala. Jan. 23, 2004); *Boswell, et al, v. Wyeth, et al*, 03-T-1256-N (M.D. Ala. Feb. 2, 2004); *Brunson v. Wyeth, et al*, 03-T-1167-S (M.D. Ala. Jan. 23, 2004); *Terrell, et al. v. Wyeth, et al.*, 03-VE-2867-S (N.D. Ala. Dec. 12, 2003); *Cash v. Wyeth, et al.*, CV-03-RRA-3378-E (N.D. Ala. Feb. 3, 2004), etc.

The above-mentioned cases, plaintiff contends, all involved the same fraudulent joinder issues. Braden claims that Wyeth has improperly removed at least fifteen cases pending before the various federal courts. No distinction exists, Braden asserts, between Wyeth's contentions in this case regarding joinder and the arguments ruled on (in favor of remand) in the above-referenced cases.

**B.      Jurisdiction**

Diversity jurisdiction, Braden claims, does not exist here since the sales representative defendants continue to be Alabama residents.[5] Thus, plaintiff claims, the case must be remanded

---

[5] Diversity is determined as of the date the action commences. *See Freeport-McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

to the Circuit Court of Calhoun County, Alabama.  Moreover, Braden argues, the fraudulent joinder

rule does not apply.  According to Braden, fraudulent joinder must be pleaded with particularity,

supported by clear and convincing evidence, and proven with "certainty."  *See Wilson v. Republic*

*Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256,

259 (5th Cir. 1995).[6]  Defendant's burden in proving fraudulent joinder, plaintiff asserts, is heavy.

*See Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997).  Only when the court has determined the

moving party has evidenced no possibility of recovery may the court disregard the defendant's

citizenship for jurisdictional purposes.  *See Tapscott* (abrogated on other grounds); *Triggs v. John*

*Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).[7]  In deciding whether joinder is

---

[6] The cited pages of these cases do not appear to fully support Braden's contention. However, the court notes *Parks v. New York Times Company*, 308 F.2d 474 (5th Cir. 1962)( "A claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence.")

[7] As long as there is a mere possibility of recovery by plaintiff, Braden argues, defendants are properly joined.  *See Adams*, 122 F. Supp.2 d at 1303; *see also Bolling* at 400; *Hales v. Merck Co., et al.*, CV-03-AR-1028-M (N.D. Ala. June 26, 2003).  *Triggs*, this court notes, described three circumstances under which fraudulent joinder may be found:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.  *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).  The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.  *Coker*, 709 F.2d at 1400.  In *Tapscott*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified – i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.  *Id.* at 1360.

The *Triggs* court continued:

fraudulent, plaintiff contends, the court may not decide the merits of the asserted claims. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3rd Cir. 1990).[8] Plaintiff also relies on the following pronouncement in *Bryant v. Wyeth, et al:*

> Wyeth must show, by clear and convincing evidence, that there is not "even a possibility that a state court would find that the complaint states a cause of action against" the doctor or clinic.
>
> This Court should not look for "a winning case against the allegedly fraudulent Defendant[s]," but merely for the Plaintiff's pleading "a possibility of stating a valid cause of action." This does not require that the Plaintiff's cause of action be certain under state law: "even an *arguable* cause of action" will survive the "possibility" test. *See Crowe v. Coleman*, 113 F.3d 1536, 1539-40 (11th Cir. 1997)(where the Plaintiff's Georgia-law nuisance claim survived this test, even though Georgia case law was in conflict of whether the conduct in question was actionable, and the Georgia Supreme Court had not spoken on the issue (emphasis added). If the Plaintiff's claim is at least arguably viable under state law, joinder is legitimate. *Id.* Furthermore, "any ambiguity or doubt about the substantive state law favors remand to state court." *Id.* at 1539.

*See Bryant v. Wyeth, et al.*, CV-02-632-BH-M (S.D. Ala. Sept. 24, 2002)(involving state law claims against physician). *See* Pl. Ex. A. "The law in the Eleventh Circuit favors remand where federal

---

> In the instant case, the parties do not suggest that there has been "outright fraud in the plaintiff's pleading of jurisdictional facts," so we concern ourselves only with the first and third types of fraudulent joinder. Turning to the first type, "If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." *Coker*, 709 F.2d at 1440-41 (emphasis added). The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.

[8] *Boyer*, the court observes, also stated:

[T]his is not a case where the action against the individual defendants is defective as a matter of law. *See* 1A *Moore's Federal Practice* ¶ 0.161[2] at 274 ("The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state.")

jurisdiction is not absolutely clear." *Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400 (M.D. Ala. 1995).

### C.     No Court Is Better Suited to Decide Remand Than This Court.

Plaintiff urges this court to decide the remand issue, contending the MDL court would not be better situated to decide the question of fraudulent joinder.  According to Braden, the complaint sufficiently pleaded claims against Cherry and Lavender, and both the Middle and Northern District Courts in Alabama have held that a valid cause of action existed against a non-diverse sales representative of a pharmaceutical company in a defective drug/product liability action.  *See Crittendon, et al v. Wyeth, et al*, CV-03-T-920-N (M.D. Ala. Nov. 21, 2003)[9] and *Floyd, et al. v. Wyeth, et al*, CV-03-C-2564-M (N.D. Ala. Oct 20, 2003).[10]  Furthermore, Braden alleges, the sales representatives' affidavits are insufficient to prove fraudulent joinder.  Although the affidavits dispute the conduct described in the complaint, and Wyeth denies all promotional activity described in the complaint, Braden contends that a jury is the only proper entity to evaluate the credibility and veracity of the disputed evidence.

In fact, Braden argues, Wyeth promoted both Pondimin and Redux through defendant sales representatives.   While Wyeth argues that neither Wyeth nor its sales representative "detail" personnel ever marketed, promoted, or distributed the diet drugs at issue to physicians (and thus plaintiff has no possibility of stating a colorable claim against the sales representatives),federal

---

[9] In *Crittendon*, Braden argues, Judge Thompson remanded a case to state court on this identical issue, determining no fraudulent joinder and/or misjoinder against the Alabama resident defendant, sales representative Joe H. Kelly. *See* Pl. Ex. C.

[10] In *Floyd*, Braden contends, Judge Clemon noted Wyeth's failure to carry the heavy burden of proving fraudulent joinder.

courts in Alabama have previously disagreed with this contention. *See Crittendon; Floyd; Storey; Ballard; Blair*, etc. Despite these remand orders, plaintiff notes, Wyeth has continued to file removal petitions on the basis of alleged fraudulent joinder.[11] This lengthy list, plaintiff argues, demonstrates a concerted effort of Wyeth to prolong the litigation and delay the issues from reaching a jury.[12]

Plaintiff also presents the alleged "truth behind Wyeth's promotion of Pondimin." According to Braden, the evidence shows Wyeth actively promoted the drug through its sales forces, including A.H. Robins and Lederle (Wyeth's predecessors) with whom Cherry and Lavender were employed. Braden relies upon a 1997 unpublished Texas case, *Heichel v. A.H. Robins Company, Inc.*, which found that A.H. Robins sales representatives actively promoted Pondimin during the late 1980's and early 1990's by providing preprinted Pondimin pads to prescribing physicians. *See Heichel*, 1997 WL 317054 (Tex. App. 1st Dist.)(June 12, 1997). Furthermore, plaintiff argues, even in the late 1980's, Wyeth's sales forces "were not only promoting Pondimin, but were promoting the off-label use of their diet-drugs, as the preprinted pads also included a prescription for another diet drug, Tenuate."

Braden also argues that Wyeth marketed Redux through its sales force. According to plaintiff, neither Wyeth nor the sales representatives have denied marketing this drug to Braden's prescribing physicians. Braden further asserts: "Because Redux and Pondimin both contained the same active ingredient, the d-isomer of fenfluramine, each detail visit for one of the drugs was also

---

[11] Plaintiff lists twenty-four cases. This court will not restate the list here.

[12] Plaintiff reasserts his right to choose among proper forums, including the right to avoid a federal forum where properly joined non-diverse defendants are present. *See Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 688-89 (S.D. Tex. 1997).

a detail visit for the other drug.  Each time a sales person represented that Redux was safe and effective, he was telling the doctor that Pondimin was also safe and effective, and vice versa."  Thus, Braden asserts, plaintiff has stated a colorable state law cause of action against Cherry and Lavender.  A cursory glance at the complaint, Braden argues, reveals colorable claims against the sales representative defendants.

## II.    Defendant's Response[13]

### A.    Preliminary Statement

Across the country, Wyeth asserts, diet drug plaintiffs' attorneys have been seeking to prevent removal by naming various non-diverse defendants, including sales representatives, doctors, and pharmacies.  According to Wyeth, claims against such non-diverse defendants are not viable and will not be pursued to judgment.  In surveying the procedural landscape of such cases, Wyeth asserts, the diet drug MDL court found that such joinder is nothing more than a "sham, at the unfair expense not only of AHP but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against AHP, the real target, in a federal forum."  *See Anderson v. Am. Home Prods. Corp.*, 220 F. Supp.2d 414, 425 (E.D. Pa. 2002).[14]  Wyeth notes its defeat of more than 15,200 plaintiffs' remand petitions which "attempted to evade federal court through fraudulent joinder."

This case, Wyeth asserts, falls within the category of "shams" described by the MDL court.

_____

[13] In the alternative, Wyeth seeks a motion to stay the case for transfer to the MDL proceeding. *See infra.*

[14] *Anderson* further found that plaintiffs "are engaging in improper efforts to prevent [Wyeth] from exercising its statutory right . . . to remove cases based on diversity of citizenship in the federal courts in Louisiana and Mississippi."

Wyeth points to a Northern District of Alabama diet drug case, *Catherine Armstrong, et al. v. Wyeth*, where plaintiffs were represented by the same counsel representing Braden in the instant case. Ms. Lisa Suzanne Hill Casteel ("Casteel"), a former Wyeth sales representative, was named as a defendant. On February 5, 2004, Casteel alleged in her affidavit, Robert Morris of Morris & McAnnally, L.L.C. telephoned her, stated that he and his firm were dealing with Alabama fen-phen lawsuits, and requested her help for plaintiffs in return for avoiding future litigation. *See* Casteel Affidavit. This behavior, Wyeth argues, shows plaintiff's counsel are engaging in improper efforts to prevent removal.[15]

In fact, Wyeth asserts, plaintiff has no reasonable basis for claims against Wyeth sales representatives, since there is allegedly (1) no evidence that plaintiff used Redux, the only type of diet drug promoted by sales representatives and (2) no evidence to contradict such representatives' sworn testimony that they did not know of any association between Wyeth's diet drugs and VHD, the disease allegedly suffered by plaintiff.[16] Furthermore, Wyeth argues, Alabama law precludes claims against defendants Cherry and Lavender for breach of warranty and violation of AEMLD, since they are not manufacturers or sellers.   In *Cross v. Wyeth*, Wyeth argues, the district court for the Southern District of Alabama denied a motion to remand in a diet drug case involving sales representatives. *See* Def. Ex. B.[17]  Moreover, Wyeth observes, in a diet drug case before Judge

---

[15] The court does not see the connection between the Jackson law firm (which represents Armstrong and Braden) and Mr. Morris of Morris & McAnnally (who allegedly contacted Ms. Casteel).

[16] While the complaint provides "facts" related to VHD and PPH, this court notes, plaintiff does not refer to her injuries so specifically.  Instead, she alleges among other things "injury to the heart," "injury to the pulmonary system," and "other physical injuries."

[17] On March 29, 2004, this court has discovered, the *Cross* court vacated and set aside its prior denial of plaintiffs' motion to remand and its prior granting of defendant's motion to stay

Vining of the Northern District of Georgia (applying Eleventh Circuit law), that court found fraudulent joinder of sales representatives and denied remand to 14,600 plaintiffs in 168 cases. *See* Def. Ex. C (*In re Fen-Phen Litigation*). Judge Vining held that plaintiffs had no reasonable basis for a claim against the sales representatives and adopted the reasoning of the diet drug MDL Court in an opinion denying remand to 124 plaintiffs. *See* Def. Ex. D *(Weaver v. Am. Home Products Corp.*, No. 03-02153 (E.D. Pa. July 30, 2003)). *Weaver* found that plaintiffs failed to state a colorable claim against such representatives because, among other things, they failed to allege that they took the one type of diet drug promoted by Wyeth sales representatives and failed to allege any specific misstatements by the sales representatives. *See also* Def. Ex. E ( *Rainey v. Wyeth*, No. 03-20128 (E.D. Pa. June 12, 2003)).[18] By Wyeth's account, these decisions comport with decisions

---

pending transfer to the MDL. In its March 29, 2004 order, the *Cross* court granted plaintiffs' motion to remand based on its view that it had lacked jurisdiction to enter its previous orders. In denying plaintiffs' motion for sanctions, the court concluded: "[S]ufficient questions . . . concerning the appropriateness of removal . . . preclud[e] the requisite finding that the removal in this case was not only improvident but done in bad faith."

[18] The court provides the following excerpt from *Rainey*:

> We note first that there is no indication in the complaint that the plaintiff, or the plaintiff's physician Dr. Franco, received any drugs from the sales representative defendants. In fact, according to an uncontested affidavit submitted by Dan J. Shepherd, the Zone Vice President of Wyeth's Southern Business Unit, no Wyeth sales representative ever promoted Pondimin. Additional affidavits submitted by eight of the nine sales representative defendants further confirm that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied or tested Pondimin, or trained anyone to do so, nor did they call or meet with Dr. Franco. Since Alabama law only holds corporate employees liable for wrongful actions in which they personally participate, plaintiff has no colorable claim against the sales representatives. . . . In fact, in the complaint, plaintiff barely discusses the sales representatives except generally to aver their involvement in marketing and promoting Pondimin. In her brief in support of the motion to remand, she does not even mention them.

12

from the Eleventh and Fifth Circuits as well as other jurisdictions which rejected plaintiffs' efforts to fraudulently join sales representatives in diet drug litigation.[19]

### B.   Factual Background

First, Wyeth alleges, Redux and Pondimin were initially approved for sale by the FDA. When information indicating a possible association between use of the drugs and VHD came to light in September 15, 1997, Wyeth contends, it voluntarily withdrew those drugs from the market. After waves of litigation, Wyeth entered a national class action settlement with diet drug claimants in 1999, which was approved by the MDL court. Plaintiff claims to suffer from VHD.[20] According to Wyeth, plaintiff belongs to the Settlement Class and is bound by the Settlement Agreement. Plaintiff brings this case pursuant to provisions of the Settlement Agreement that permit class members to bring individual lawsuits if they qualify medically.[21] If the motion for remand is denied, Wyeth alleges, the MDL court will adjudicate Braden's eligibility to bring this suit under the provisions of the Settlement Agreement.

Defendant sales representatives, Wyeth argues, have no liability for plaintiff's injuries.

---

Plaintiff has not provided a scintilla of evidence that the sales representative either promoted Pondimin generally or specifically to Dr. Franco. Since she has no colorable claim against them, we therefore find that they too were fraudulently joined.

[19] While the court acknowledges the cases cited by Wyeth, *see* Def. Exs. G-P, it does not recite those citations here. Incidentally, this court notes, *Weaver* appears to have applied the Third Circuit's rather than the Eleventh Circuit's fraudulent joinder standard.

[20] *See supra* note 16.

[21] Wyeth notes that 25,000 plaintiffs have filed such individual lawsuits nationwide.

According to the affidavits of Cherry, Lavender, and Russell Matlock ("Matlock"),[22] the job of Wyeth's sales representatives is to ensure that physicians are aware of specific Wyeth products so that the physicians can consider whether to prescribe them for particular patients. Sales representatives call upon physicians with respect to particular Wyeth products and among other things, deliver to the physician FDA-approved package inserts and other FDA-approved information for the particular products. A physician visit typically lasts less than five minutes with some physicians refusing to meet with sales representatives.

Wyeth asserts that Wyeth sales representatives (including Cherry and Lavender) did not promote Pondimin. *See* Cherry and Lavender Affidavits. When deposed on January 12, 1999, Wyeth's President, Joseph M. Mahady ("Mahady") testified: "The A.H. Robins sales force from the time that they were part of Wyeth-Ayerst never promoted or distributed the products . . . so the A.H. Robins sales force did not have involvement at that time with the – with the sale of – Pondimin." Cherry and Lavender averred that they never "advertised, assembled, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted Pondimin, or trained anyone to do so." Furthermore, Wyeth alleges, Lavender and Cherry stated that they received no credit/compensation for any sales of Pondimin. *See also* Malady Dep. ("Q: Were there any salesmen for your company [Wyeth] that ever got credit for the sale of Pondimin? . . . A: They did not detail the product and they did not receive credit for the product.")

If a licensed healthcare provider asked the sales representative about Pondimin, Wyeth

---

[22] Since 1997, Matlock has served as a Wyeth Manager for the St. Louis region, supervising field sales representatives working in the St. Louis area. Apparently, Matlock had no duties regarding field sales of Pondimin and Redux in the Calhoun County, Alabama area during the time in question.

asserts, they would have answered that question based on information provided by Wyeth. *See* Cherry and Lavender Affidavits. Despite Braden's claims against Cherry and Lavender for failure to warn about the risks of VHD, Cherry and Lavender asserted, they were not aware of any alleged association between Pondimin and/or Redux and valvular heart disease until the allegations were first publicized in July 1997. *Id.* Shortly thereafter, Wyeth alleges, the company notified all prescribing physicians about the possible association between diet drugs and VHD, *see* Ex. U, and in September 1997, Wyeth withdrew the diet drugs from the market. Finally, Cherry and Lavender stated, they "never intentionally misrepresented the safety or efficacy of Pondimin, Redux . . . or the state of testing" of those drugs in use with others to any physician or diet drug user.

**B.     Arguments**

**1.     Fraudulently Joined Defendants Cannot Defeat Diversity Jurisdiction**.

The Supreme Court, Wyeth argues, has instructed federal courts to be vigilant in protecting a defendant's right to be in federal court. *See Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907); *accord Katz v. Costa Armatori, S.p.A.*, 718 F. Supp. 1508, 1514 (S.D. Fla. 1989). Defendant accuses Braden of joining resident defendants without a reasonable basis for any claims against them and without intending to pursue such claims to judgment. Wyeth relies on *Tapscott*, *see supra*. According to Wyeth, fraudulent joinder exists where there is no reasonable basis for a claim against the defendant. *See Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997).[23] Here,

_____

[23] *Crowe* stated in pertinent part:

> If this case were properly before the district court (and this court) under original diversity jurisdiction, we would be obligated to predict how the Georgia Supreme Court would rule on this issue or to certify the question to the Georgia Supreme Court. For purposes of determining whether this case should be remanded to state court, however, the inquiry by federal judges must not go so far:

15

Wyeth argues, there is no reasonable possibility (or any possibility) that plaintiff can prevail against the sales representative defendants under Alabama law.

Rather than the reasonable possibility standard, Wyeth notes, plaintiff relies on language in other cases suggesting a "no possibility" standard. However, Wyeth argues, the Fifth Circuit recently reviewed the history of its fraudulent joinder decisions and determined that the "no possibility" language should not be taken literally; instead "no possibility" means "no reasonable possibility." *See Travis v. Irby*, 326 F.3d 644, 647-48 (5th Cir. 2003). In *Travis*, the current Fifth Circuit explained that remote possibilities of recovery are not sufficient to preclude fraudulent joinder, citing *Bobby Jones*. According to Wyeth, the fact that the Eleventh Circuit cited *Bobby*

---

This is an Erie problem in part, but only part. In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is.... But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law. Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 176-77 (5th Cir.1968) (citations omitted).

However, this court notes, *Crowe* also provided as follows:

While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," id. at n. 9, the jurisdictional inquiry "must not subsume substantive determination." Id. at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993).

*Jones* in *Crowe* is "added evidence that the Eleventh Circuit applies the no reasonable possibility standard."[24]

Moreover, Wyeth argues, courts within the Eleventh Circuit have applied a "no reasonable possibility" standard. In *In re Fen-Phen Litigation*, Wyeth contends, Judge Vining rejected plaintiffs' opposition to the MDL Court's "no reasonable possibility" standard, held that joinder of sales representatives was fraudulent, and denied remand. *See* Def. Ex. C.[25]

A fraudulent joinder inquiry requires the court to conduct a thorough jurisdictional inquiry rather than simply accept plaintiff's allegations as true. *See University of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11ᵗʰ Cir. 1999)("[O]ur removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction.") According to Wyeth, the court should look beyond the pleadings and consider affidavits, depositions, transcripts, etc. *See Crowe* at 1538; *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11ᵗʰ Cir. 1989); *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5ᵗʰ Cir. 1995). The Eleventh Circuit, Wyeth contends, applies similar procedures to resolve fraudulent joinder claims and motions for summary judgment. *See Crowe* at

---

[24] Defendant justifies a no reasonable possibility "rule" as follows: "No matter how clearly the law precludes a claim against a particular defendant, a plaintiff could always argue that she has some possibility of prevailing because there is some chance – however remote or theoretical – that a state court might change the law or somehow distinguish the case at issue from applicable precedent. Applying a literal 'no possibility' standard – as opposed to a 'no reasonable possibility' standard – would eviscerate the fraudulent joinder doctrine."

[25] Cases which Wyeth deems consistent with Judge Vining's decision include: *Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (applying "arguably reasonable basis" test); *TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1313-14 (M.D. Ala. 2002)(applying "reasonable basis" test); *Anderson v. Allstate Life Ins. Co.*, 2001 WL 228057, * 8 (S.D. Fla. 2001)(same). Additionally, Wyeth relies upon other circuit cases applying "no reasonable basis" standard. *See, e.g., Filla v. Norfolk Southern Ry. Co.*, 2003 WL 21692708, at *2-4)(8th Cir. 2003); *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 879 (7ᵗʰ Cir. 1999).

1538. Contrary to Braden's arguments, defendant asserts, neither *Crowe* nor any other Eleventh Circuit case requires this court to remand if there is a dispute between affidavits submitted by the defendant and unsupported allegations of the complaint.[26] The court must deny remand, defendant argues, if plaintiff does not supply such evidence.

Additionally, Wyeth asserts, plaintiff misrepresents Eleventh Circuit precedent by stating that the court may not make any substantive determinations based on defendants' affidavits or declarations. In *Crowe*, Wyeth argues, the Eleventh Circuit found that the district court had erred by resolving factual disputes when sworn statements had been provided on both sides. Here, Wyeth asserts, plaintiff has provided no sworn statements to contradict Wyeth's evidence. Wyeth proffers *Badon v. RJR Nabisco*, 224 F.3d 383, 392-94 (5th Cir. 2000) as an analogous case. The *Badon* court affirmed a finding that an in-state distributor had been fraudulently joined where defendants rested on their allegations and failed to introduce evidence to contradict affidavits from the distributors stating that they had not conspired.[27] The *Badon* court stated:

> As noted, our precedent establishes that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment." While such a procedure requires that all <u>disputed</u> questions of fact be resolved in favor of the nonmoving party as with a summary judgment motion, in determining diversity the mere assertion of 'metaphysical doubt as to the material facts' is insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment

---

[26] In *Crowe*, defendant asserts, since plaintiff's complaint was verified, the facts alleged were equivalent to a sworn affidavit. *See Id.* at 1541.

[27] *See also El Chico Restaurants, Inc. v. Aetna Cas. & Surety*, 980 F. Supp. 1474 (S.D. Ga. 1997)(denying remand where plaintiff failed to introduce evidence to contradict defendants' declarations). While Wyeth also cites *Budd v. Wyeth*, NO. 03-CA-465 (W.D. Tex. Sept. 16, 2003) as finding fraudulent joinder of sales representatives where plaintiff did not submit evidence to contradict the sales representatives' affidavits, the court has not been able to locate the text of that opinion.

motion: We resolve factual controversies in favor of the nonmoving party, but only when there is actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Id.* at 393-94.[28]

## 2.   Plaintiff Has No Reasonable Basis for a Claim against the Sales Representatives.

According to Wyeth, Alabama law does not create employee liability for an employer's alleged wrongs. To hold an employee liable, Wyeth asserts, plaintiff must demonstrate that the employee personally participated in a tort against the plaintiff. *See, e.g., Mills v. Wex-Tex Indust.*, 991 F. Supp. 1370, 1381-82 (M.D. Ala. 1997).[29] Here, Wyeth argues, plaintiff cannot make such a showing. First, Wyeth argues, plaintiff does not allege use of Redux.[30] In affidavits, the sales representatives have stated that they promoted only Redux. The complaint alleges use of Pondimin and/or Redux, but plaintiff has not provide evidence of which diet drug(s) Braden took. Wyeth argues: "Plaintiff's counsel undoubtedly knows that alleging use of Redux would aid plaintiff's efforts to defeat removal. Thus, plaintiff's failure to submit evidence of such use in the face of Wyeth's evidence that the sales representatives did not promote Pondimin, strongly supports the conclusion that plaintiff used Pondimin, not Redux. According to Wyeth, plaintiff's reliance on an

---

[28] *See also Budd v. Wyeth*, No. 03-CA-465. Wyeth criticizes plaintiff's reliance on *Hales v. Merck* as contrary to Eleventh Circuit authority because the *Hales* court believed it was prohibited from reviewing evidence outside of the complaint.

[29] Other cases cited by plaintiff include *Bowman v. Coleman Company, Incorporated*, Civ. Action No. 96-0448-P-C, Slip. Op. (S.D. Ala. Sept. 3, 1996) and *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997).

[30] In the complaint, this court notes, the plaintiff refers to "Pondimin and/or Redux" throughout.

19

unpublished opinion (*Heichel*) and a 1995 memo is misplaced.[31]

Furthermore, plaintiff asserts, the individual claims against sales representatives fail regardless of which drug plaintiff used. First, Wyeth argues, there is no reasonable basis for the negligence or failure to warn claim. A failure to warn claim requires proof that the sales representatives had information about the risks of VHD posed by diet drugs that were not publicly available and that they did not disclose.[32] *See Devise v. Kenmore, Inc.*, CV-03-J-943-S, Slip Op.

---

[31] In fact, plaintiff argues, that evidence establishes that Wyeth did not promote Pondimin. According to Wyeth, the memo is "entirely consistent" with Cherry's and Lavender's affidavits that they provided information about Pondimin when asked by a physician. Margaret Crowley ("Crowley"), Wyeth Director of Area Marketing, testified that she supplied the sales force with information they were to use in responding to doctors' potential questions about Pondimin (even though sales representatives did not affirmatively promote it).

Furthermore, Wyeth asserts, the *Heichel* case involved a prescription pad distributed in 1988. According to Wyeth, "Wyeth acquired A.H. Robins in 1989, and Joseph Mahady (president of Wyeth-Ayerst North American) testified that Pondimin has not yet been promoted by the sales force since Robins became part of Wyeth."

The September 21, 1995 memo (from Wyeth's Lederle Director Area Marketing to the Lederle Sales Force) stated:

> There has been a growing interest among physicians as well as patients regarding the use and availability of Pondimin for weight loss. Medin reports on the use of Pondimin are expected to continue as national promotions from Nutri-Systems and other weight loss clinics promote programs that include Pondimin. As a result, we expect increased inquiries by physicians.

> The following is a list of the information enclosed: Resource Directory, Pondimin Package Insert, Questions and Answers about Pondimin, Pondimin Fact Sheet. The enclosed information packet was developed to *serve only as a resource*. It will provide you with a quick overview of this product's approved labeling, so that each of you will be better prepared to respond to your physicians. *See* Pl. Ex. E.

[32] Again, it is not clear to the court that VHD is the only alleged injury, as the complaint alleges other injuries, including those to the "pulmonary system."

(N.D. Ala. May 12, 2003);[33] *Bowman v. Coleman Co., Inc.*, CV 96-0448-P-C, Slip Op. (S.D. Ala. Sept. 3, 1996)(finding employee owed no duty to warn).

In this case, Wyeth contends, the record establishes that defendant sales representatives were unaware that diet drugs might cause VHD.[34] This alleged lack of pre-publicity information about the possible risks of VHD "makes eminent sense," Wyeth argues, since Crowley testified to the following: (1) sales representatives received their information about diet drugs from Wyeth; (2) the Wyeth medical affairs department (with no input from sales representatives) prepared that information; and (3) the information included responses to any questions doctors might ask

---

[33] According to Wyeth, *Devise* found that a salesperson had no duty to disclose. The court notes that the individual defendant in *Devise* was named in two counts of the complaint – AEMLD and fraudulent suppression. Regarding the AEMLD claim, the court notes, the *Devise* court found: "As defendant [salesperson] is not a manufacturer, distributor, or seller of the dishwasher at issue, the court finds that the plaintiffs have failed to state a claim upon which relief can be granted against this defendant under the AEMLD." Regarding the fraudulent suppression claim, the *Devise* court stated:

> Defendants dispute that defendant Bibb had any duty to disclose anything to the plaintiffs at all. The plaintiffs do not allege any particular relationship with defendant Bibb which would have placed on him a duty to disclose a material fact. They also do not allege that they relied on any statement of defendant Bibb to purchase the dishwasher in question. In fact, they do not even allege that defendant Bibb stated the dishwasher was safe. Plaintiffs state no fact allegedly known by Bibb, which he had a duty to disclose but failed to do so. Rather, they merely ask this court to rule that an individual salesman for a large company, who may or may not have done anything more than ring up a sale for the plaintiffs, should be liable for an alleged defect in the product which does not manifest itself for more than three years. The court declines to extend such liability here.

[34] Cherry's and Lavender's respective affidavits stated: "I was not aware of any alleged association between Pondimin and/or Redux and valvular heart disease until the time such an allegation was first publicized." The first publication date was July 1997, Wyeth alleges, shortly before Wyeth warned doctors about that association and withdrew the drugs from the market.

salespersons about Pondimin. Both Lavender and Cherry have avowed no specialized medical or pharmacological education, except information received from Wyeth. Wyeth highlights the existence of a September 21, 1995 Crowley Memorandum which allegedly discussed "side effects" of the diet drugs but did not include or attach information suggesting VHD risk.[35]

Morever, Wyeth argues, Braden's fraud claim must fail.[36] Wyeth reiterates defendant sales representatives' lack of knowledge about an association with VHD prior to the widespread publicity in July 1997. Without such knowledge, Wyeth contends, the sales representatives cannot be liable for intentional or reckless fraud or suppression. *See, e.g., Crowder v. Memory Hill Gardens, Inc.*, 516 So. 2d 602 (Ala. 1987)(requiring evidence of intent to deceive); *Hardy v. Blue Cross & Blue Shield*, 585 So. 2d 32, 39 (Ala. 1991)(enumerating elements of fraudulent suppression as: (1) defendant's duty to disclose; (2) defendant's suppression of an existing, material fact; (3) defendant's actual knowledge of the fact and its materiality; (4) which induced plaintiff to act and (5) caused plaintiff to suffer actual damage as a proximate result. (Emphasis added).[37]

Additionally, Wyeth contends, plaintiff cannot make out an "innocent" misrepresentation claim against Cherry and Lavender. Even if the sales representatives represented to Braden's doctor(s) that Redux (or Pondimin) was "safe and effective," Wyeth argues, such representations

─────────────────

[35] Wyeth further argues: "Plaintiff provides not even a shred of evidence to contradict the evidence that the sales representatives did not know about the risk of VHD. This is not surprising because plaintiff's theory of the case is that Wyeth concealed the risk of VHD from the entire world. Plaintiff could not contend that Wyeth engaged in such widespread concealment and contend at the same time that Wyeth revealed the risk of VHD to thousands of sales people."

[36] The gist of this claim, Wyeth contends, is that Cherry and Lavender misrepresented that the diet drugs were safe.

[37] Wyeth cites a number of other cases for the same proposition, which the court will not repeat here.

22

are not actionable under Alabama law.  According to Wyeth, such statements would not constitute

fraud because the FDA had approved the drugs as "safe and effective" until as recently as April 1996

in the case of Redux, and Cherry and Lavender were simply repeating this information with no

knowledge to the contrary.  While Wyeth does not assert that FDA approval supersedes state product

liability law, Wyeth contends that FDA approval renders any such statement much less than

intentional, reckless, or negligent misrepresentation.[38]

Under Alabama law as applied in *Mills* as well as other cases, Wyeth again argues,

employees are not individually liable for their employer's torts absent allegations of personal

participation.[39]  Wyeth urges: "If the FDA-approved labeling for these drugs failed to warn of an

---

[38] Wyeth proceeds to describe the FDA's reputation and role as determined by the Food Drug and Cosmetics Act ("FDCA").  The court does not detail this entire section of Wyeth's brief.  However, the court notes, Wyeth quotes the FDA's chief counsel as follows: "A statement in the labeling of a prescription drug has been found by FDA to represent the most current and complete scientific evidence."  Wyeth also describes the procedure of FDA approval of a drug.  When the FDA approves a new drug application, Wyeth observes, it approves both the pharmaceutical product, finding that it is safe and effective, and the final version of the product labeling.  *See* 21 U.S.C. §§ 355(c), 355(d)(7).  Wyeth quotes the Supreme Court as follows:

> Viewing the FDCA as a whole, it is evidence that one of the Act's core objectives is to ensure that any product regulated by the FDA is "safe" and "effective for its intended use."  See 21 U.S.C. 393(b)(2).  This essential purpose pervades the FDCA.  For instance, 21 U.S.C. 393(b)(2) defines the FDA's "[m]ission" to include "protect[ing] the public health by ensuring that . . . drugs are safe and effective" and that "there is reasonable assurance of the safety and effectiveness of devices intended for human use."  The FDCA requires premarket approval of any new drug, with some limited exceptions, and states that the FDA "shall issue an order refusing to approve the application" of a new drug if it is not safe and effective for its intended purpose.

*See Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2002).

[39] *See Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983); *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997).

association with VHD because Wyeth concealed it from the world, as plaintiff alleges, holding a low level employee such as Mr. Cherry and Mr. Lavender subject to liability for innocent or mistaken fraud is tantamount to imposing strict liability on these employees, eviscerating that well-established doctrine."[40] Moreover, in January 1997, Wyeth avers, Wyeth distributed a "Dear Doctor" letter to Pondimin prescribers to alert them to that a further change in the Pondimin label made in November 1996 about PPH.  That letter, Wyeth argues, stated in bold lettering: **"PONDIMIN IS AN APPETITE SUPPRESSANT, AND APPETITE SUPPRESSANTS INCREASE THE RISK OF DEVELOPING PRIMARY PULMONARY HYPERTENSION, AN OFTEN FATAL DISORDER."**[41]

According to Wyeth, Alabama courts have rejected tort claims against sales representatives under similar circumstances.  Wyeth again relies on *Devise* and *Bowman*, *see supra*.  In *Bowman*, a heater salesman allegedly advised a purchaser-plaintiff that he was receiving "a good heater" and that he "would not experience any problems with it."  Wyeth asserts that the *Bowman* court found no liability on a negligence/wantonness theory (and thus fraudulent joinder) because the store manager owed no duty to the plaintiff to prevent the heater from entering the stream of commerce and because the store manager lacked the training and expertise to perform a safety inspection of the heater.

---

[40] Even if Lavender and Cherry had represented to physicians that the diet drugs were risk free, Wyeth argues, plaintiff would not be able to establish reasonable reliance on such statements. *See Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997).  Wyeth notes FDA-approved labeling which included warnings about the drugs and their side effects.  For instance, Wyeth points out, the FDA-approved package insert for Redux and Pondimin (as of mid-1996) contained an express warning about PPH, a potentially fatal disease.

[41] Wyeth has cited Exhibit U, which is a July 1997 Dear Doctor letter.  However, that letter does not appear to contain the afore-mentioned quotes.

In the case of pharmaceutical sales, Wyeth argues, the prescribing physician is viewed as a "learned intermediary" who is expected to weigh the benefits and dangers of a particular medication before prescribing it to a patient. *See Stone v. SmithKline & French,* 447 So. 2d 1301, 1304-05 (Ala. 1984). This rule establishes that the manufacturer owes a duty to advise the prescribing physician of any potential dangers. *See Emody v. Medtronic, Inc.,* 238 F. Supp. 2d 1291, 1296 (M.D. Ala. 2003). Wyeth reiterates that the manufacturer provides safety warnings on the drug label, but the law imposes no duty on sales representatives to give such warnings. *See Caudle v. Partridge,* 566 So. 2d 244, 247 (Ala. 1990)(manufacturers and sellers have a duty to warn of dangerous products). Finally, Wyeth contends, the complaint fails to plead fraud with particularity as required by both Rule 9(b) of the Federal Rules of Civil Procedure and its Alabama counterpart. According to Wyeth, plaintiff must allege information such as the time, place, content, and speaker of the allegedly fraudulent misrepresentations. *See Rezulin I,* 133 F. Supp. 2d 272, 283 (S.D.N.Y. 2001)(applying Alabama law); *Devise, see supra.* Importantly, Wyeth contends, plaintiff failed to allege: any specific misstatement by Lavender and Cherry to plaintiff's doctor(s), the time and place of any such supposed statements, or the doctor(s)' reasonable reliance on such alleged misstatements.

Turning to AEMLD claims, Wyeth asserts, the plaintiff must prove that the non-diverse defendants sold or supplied the product in question. In Cherry's and Lavender's affidavits, Wyeth contends, the sales representatives claimed to have never manufactured, sold, or supplied the diet drugs. Wyeth again relies on *Rezulin I* (in applying Alabama law, pharmaceutical representatives

found not be sellers or suppliers of the prescription drug they represent), *Devise*, and *Bowman*.[42]

Defendant quotes *Rezulin I* as follows:

> There is another problem with the Alabama complaint against the sales representatives. The AEMLD is founded on "broader moral notions of consumer protection and not economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." Accordingly, the AEMLD imposes liability only on manufacturers, sellers and suppliers.
>
> The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin. Rather, he was an agent of the manufacturer and seller. As a corporate employee, he was not the "one best able" to to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case.[43]

Wyeth reiterates the allegedly limited roles of Cherry and Lavender.[44]

---

[42]Wyeth quotes the Alabama Supreme Court for the proposition that the AEMLD is "founded on broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." *See Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 139 (Ala. 1976). The AELMD, Wyeth contends, identifies the persons/entities "best able to prevent the distribution of those products." *Id.* at 139. Pharmaceutical sales representatives do not fit the bill, Wyeth argues, for purposes of liability.

[43] *See In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D.N.Y. 2001).
    See *also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987); *King v. S.R. Smith, Inc.*, 578 So. 2d 1285, 1287 (Ala. 1991). However, the court notes, neither case involves a sales representative's liability under the AEMLD.

[44] These "facts" have been discussed earlier in this memorandum opinion. Specifically, Cherry and Lavender explained: "I never left samples of Pondimin or Redux with any healthcare provider."

For a sampling of cases where pharmaceutical sales representatives were found to be fraudulently joined, Wyeth cites *Rezulin I*; *In re Diet Drugs*, 220 F. Spp. 2d 414, 424-25 (E.D. Pa. 2002); *Furlough v. Warner Lambert Co.*, CV No. 01-0704 (W.D. La. 2001); *DaCosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1183 (D. Or. 2001); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000); *Louis v. Wyeth-Ayerst Pharm., Inc.*, No. 5:00CV102LN (S.D.

Turning to the breach of warranty claim, Wyeth asserts, the fact that defendant sales representatives are neither "sellers" nor "suppliers" proves fatal. The crux of a claim for either express or implied warranty breaches, Wyeth argues, is that the "seller" of the goods made such a warranty. *See* Ala. Code §§ 7-2-313(1) & 7-2-314(1)(2002). As with the AEMLD claim, Wyeth contends, as a matter of law the seller of a product is the corporate entity that makes the sale, not the employee of the corporation.[45]

In conclusion, Wyeth argues, any request for sanctions should be denied because of the presence of fraudulent joinder and Wyeth's good faith reliance on favorable decisions, including Judge Hand's recent decision in *Cross v. Wyeth*[46] and the MDL Court's decision in *Rainey v. Wyeth*. *See* Def. Exs. B & E.

## III.   Plaintiff's Reply[47]

Plaintiff highlights a February 20, 2004 letter from the United States of America Judicial Panel on Multidistrict Litigation ("JPML"). The letter from Chairman Hodges addressed to "Involved Judges" stated: "If you have a motion pending before you in the action – particularly a motion to remand to state court (if the action was removed to your court) – you are encouraged to

---

Miss. Sept. 25, 2000).

[45] *See Rezulin I; Labato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958)(drug store employee who sold defective product was fraudulently joined because he was not a "seller" for purposes of breach of warranty claim); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000)("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product."); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160 (S.D. Miss. 1997).

[46] *See supra* note 17.

[47] To the extent plaintiff repeats arguments from its motion to remand, the court will not repeat them here.

rule on the motion unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there."

Furthermore, Braden relies upon excerpts from hearing transcripts involving the former and current judges presiding over the *In Re Diet Drug*/MDL-1203 litigation, Judges Bechtle and Bartle, respectively.

In a March 1998 hearing, Judge Bechtle stated:

> When cases are transferred here, many times they are transferred here and very little has been done in the transferor court. They have been filed there and they are a tagalong and everything kind of stops, that allows it to work. Although, in many instances there are motions filed in the transferor court, some are motions to remand back to the state court. For example, there might be other motions pending in the transferor court at the same time, that the case is to be transferred here. In virtually every instance, the transferor court, when that court learns that it could become involved in the MDL, they do not rule on any of those motions. Although they have the authority and, indeed, the power to do so, they – it is a matter of custom – do not do that. **It is better if they did, but they don't.** (Emphasis added).

The current MDL-1203 Judge, Harvey Bartle, opined as follows during a July 2002 hearing on the issue of fraudulent joinder:

> Why shouldn't that matter [fraudulent joinder] be decided by the federal court in Louisiana rather than me remand cases to state court?

*See* MDL-1303 *Hearing Transcript* (E.D. Penn. July 16, 2002), p. 15.

> Is that really a matter for me to get involved in? Isn't it better for a federal court in Mississippi to decide that? I mean, that court would certainly be better versed in the nuances of Mississippi law that I. . . . I raise the question now, wouldn't it be better for a federal court in Mississippi – in Mississippi to decide whether a party is proper?

*Id.* at 102-103.

> Maybe doctor x did prescribe the drug for a plaintiff in Mississippi and that doctor is appropriately joined. Maybe in another case down in Texas, a particular doctor who is joined didn't do so. Now, there is no big picture

about it. It's just a specific case. One place, it is right; one place, it is wrong.
. . . .

> If I make a decision, a case specific decision about what the
law of Mississippi is with respect to a pharmacy . . . I'm going to have to look
at the complaint that was filed and see what the cause of action is. And then
I'm going to have . . . to decide what Mississippi law is. I'm going to have to
decide whether it is proper to bring that particular defendant into the case.
. . . .

> Now, maybe complaint A will have a certain theory against a pharmacy.
And then I will have to decide . . . does Mississippi permit that or not.
Then complaint B in Mississippi will a slightly different theory. So I'm then
going to have to decide whether or not in B, you can sue a pharmacy under
that theory. Maybe you can't sue it under Theory A but maybe under B.
Maybe you can't sue under failure to warn, but we all know about the ingenuity
of lawyers. There are probably 20 or 30 in this room. And I'll bet there
could be 25 or 30 different theories that lawyers could develop to sue
pharmacies in Mississippi.
. . . .

> I'm just saying to you that . . . deciding one Mississippi case related to
pharmacies may not be the end of the story.

*Id.* at pp. 104-105, 126-28.

These statements, plaintiff argues, illustrate this federal district court's superior position to

decide the remand/fraudulent joinder issues. Moreover, plaintiff repeats, federal judges within

Alabama, including the Northern District, have remanded numerous cases to state court, finding

Wyeth failed to meet its burden of proving fraudulent joinder and/or misjoinder of sales

representatives.[48] Additionally, plaintiff notes, other federal district court judges have ruled

similarly. In fact, plaintiff contends, the presiding judge of MDL-1203 issued three recent (May

---

[48] Among these are *John W. Smith v. Wyeth, et al*, CV-04-P-226-M (N.D. Ala. Feb. 27, 2004); *Boudreaux v. Wyeth*, CV-04-P-224-M; *Martha M. Davis v. Wyeth*, Cv-03-J-3167-J (N.D. Ala. Feb. 25, 2004), etc. This court has considered but will not repeat all of plaintiff's citations.

2003) remand orders. *See* Pl. Ex. G.[49]

According to Braden, Wyeth has asserted an incorrect fraudulent joinder standard under Eleventh Circuit and Alabama law, relying on cases outside of the circuit for its "no reasonable possibility" standard. Instead, plaintiff argues, an unqualified "no possibility" standard is required by Alabama law for fraudulent joinder. *See supra, Adams.* Repeating his reliance on *Crowe*, *Cabalceta Fruit*, and *Bryant v. Wyeth*, Braden argues, the removal statutes are strictly construed because "absent fraudulent joinder, a plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Crowe* at 1538.

Moreover, plaintiff argues, his claims are not subsumed by the AELMD, as argued by Wyeth.  Plaintiff asserts that both claims can be litigated simultaneously. *See McClain v. Metabolife*, 193 F. Supp. 2d 1252, 1256-57 (N.D. Ala. 2002)(allowing plaintiffs to maintain negligent failure to warn and AEMLD claims simultaneously, as AEMLD "design defect claims are fundamentally different than failure to warn claims"). Likewise, Braden asserts, his fraud and failure to warn claims are different, since "Plaintiff's fraud claims deal with why they used diet drugs to their detriment, while the AEMLD claims deal with how the diet-drugs caused them injury." *See Chase v. Kawasaki Motors Corp.*, 140 F. Supp. 2d 1280, 1291-93 (M.D. Ala. 2001)(treating AEMLD and fraud claims separately).

Finally, Braden urges, she has asserted colorable claims against the sales representatives. Braden quotes Judge Acker's opinion in *Hales v. Merck* :

---

[49] Judge Bartle's opinions and orders in these cases, this court notes, appear to address joined physicians rather than sales representatives.  Furthermore, these orders applied Mississippi law, which allegedly "allows virtually unlimited joinder at the pleading state . . . ."

This court unashamedly quotes itself: "[T]his court cannot substitute
its uncertain judgment of what the Alabama law
ought to be, or to predict what it someday will be, when this court's
jurisdiction is premised on 28 U.S.C. §§ 1441 and 1332.  The court must give
a plaintiff the benefit of all doubt on questions of Alabama law when deciding
upon subject matter jurisdiction that depends on the state of the state of the law."
*Barnes*, at 3.

[Defendants] argue alternatively that even if there is a viable cause of action
against intermediary sellers under AEMLD, there is no cause of action
against these four sales representatives/managers because three of them have
presented affidavits stating that they have never visited . . . [the plaintiff's]
treating physician, and accordingly there is no causation . . . . The court
disagrees. If the court were to consider the affidavits of [the sales representatives]
it would . . . require the court to do what it explicitly said it could not do in *Barnes,*
adjudicate the claims against the defendants on their merits before finding that
the court has subject matter jurisdiction.  *Barnes* at 3-4.

Because the defendants must prove by clear and convincing evidence that no
cause of action exists, and because the question of whether a cause of action
exists against an intermediary supplier under AEMLD is uncertain, plaintiff's
motion to remand is due to be granted . . . .

The *Hales* analysis, plaintiff argues, equally applies here.   According to Braden, in

evaluating jurisdiction, federal district courts must presume that a suit lies outside of their limited

jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Braden

repeats her reliance on *Boyer*[50] and contends: "As Alabama law is silent as to the question of

whether a cause of action exists against an intermediary supplier under the AEMLD, it is axiomatic

that Defendant Wyeth's 'fraudulent joinder' argument as to the present Alabama-resident Defendant

sales representatives fails."  Furthermore, Braden argues, the complaint specifically alleged that

Cherry and Lavender made material misrepresentations in the course of promoting pharmaceutical

_____

[50] *Boyer* stated: "[W]e hold that where there are colorable claims or defenses asserted
against or by diverse and non-diverse defendants alike, the court may not find that the
non-diverse parties were fraudulently joined based on its view of the merits of those claims or
defenses. Instead, that is a merits determination which must be made by the state court."

31

drugs which directly led to plaintiff's injury.

Finally, in her "Supplemental Opposition to Defendant Wyeth's Removal" ("Supplement"),

plaintiff again relies on *University of South Alabama v. American Tobacco Company*, *Stern*, and the

letter from Chairman Hodges dated February 20, 2004. *See supra.* On March 16, 2004, Braden

observes, Judge Coogler issued a remand order in *Vonceil Marshand v. Wyeth, et al.*, CV-03-CO-

3195-W. *See* Supplement, Ex. B. The issues in *Vonceil*, Braden argues, are identical to those in the

instant case, thus remand is warranted. Braden again notes the twenty-four diet drug cases remanded

to state courts by Alabama federal judges.

## MOTION TO STAY[51]

### I.    Defendant's Motion

Wyeth requests that this case be transferred to the MDL proceeding MDL-1203 (*In re Diet

Drugs*), which was initiated on December 10, 1997. According to Wyeth, the Braden case is a "tag-

along" action warranting an immediate conditional transfer order. Wyeth cites a number of federal

district court cases, including those from district courts in Alabama, which have been so transferred

along with pending motions to remand.[52]  Defendant again highlights *Cross*.[53]

Braden's complaint, Wyeth urges, presents significant jurisdictional issues which have arisen

---

[51] This court does not repeat arguments discussed earlier in this memorandum opinion.

[52] Among these are *John W. Smith v. Wyeth, et al.*, CV-04-P-226 and *Carolyn Boudreaux, et al. v. Wyeth, et al.*, CV-04-P-227, from the Northern District of Alabama. Defendant contends that the remand issue in these cases was identical to the remand issue here (involving sales representatives and the issue of fraudulent joinder). However, this court notes, subsequent to defendant's reliance on both *Smith* and *Boudreaux*, the stays have been lifted and the cases remanded.

[53] *See supra* note 17. While this court has considered the other cases cited by Wyeth and its arguments in this regard, it does not list all the citations here.

and will continue to arise nationwide, i.e., fraudulent joinder of Wyeth sales representatives. According to Wyeth, the MDL court has addressed these and similar issues numerous times. The MDL court's consideration of these issues, Wyeth argues, "will save precious judicial time and assure consistent rulings on the same issues." Wyeth contends that the MDL court is "uniquely familiar with the underlying facts of the case" and "especially familiar with the patterns of fraudulent joinder in the diet drug litigation." Further, Wyeth argues, the MDL court is better situated to evaluate plaintiffs' alleged pattern of suing innocent persons, such as the sales representatives here.

Moreover, Wyeth argues, this court may transfer to the MDL despite the pending motion to remand for lack of jurisdiction. *See, e.g., Gould v. National Life Ins. Co.*, 990 F. Supp. 1354, 1362-63 (M.D. Ala. 1998); *In re Ivy*, 901 F.2d 7 (2nd Cir. 1990)(granting a motion to transfer to a MDL court where a motion to remand was pending);[54] *In re Air Crash Disaster at Florida Everglades on December 19, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973)("[T]he transferee judge certainly has the power to determine the question of remand."). Wyeth relies on a number of other cases, including *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788 at *2 (E.D. La. 1995)("Because the issue involved in this remand motion is likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings in this Court pending a decision on the conditional transfer order."); *Whelan v. Dow Corning Corp.*, 1995 WL 622774 (E.D. Pa. 1995)(denying remand motion "without prejudice to raise the same

---

[54]*Ivy* stated: "The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation . . . . Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served."

issues before the transferee judge"); etc.

## II.   Plaintiff's Response

Although the JPML may be notified of the instant case, plaintiff argues, it does not appear that a conditional transfer order ("CTO") has occurred.  Accordingly, Braden argues, this court's jurisdiction over the case and plaintiff's motion to remand may cease "only if a CTO is issued, subsequently granted by the JPML, and then filed in the office of the clerk of the United States District Court for the Eastern District of Pennsylvania."   Therefore, Braden argues, asserting imminent transfer to MDL-1203 is speculative at best.  Again, Braden argues, this court is better-situated to resolve the jurisdictional issues surrounding remand and fraudulent joinder.  Braden cites various remand orders from the district courts within Alabama.  *See, e.g., Juanita Johnson, et al v. Wyeth, et al.*, CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004); *Jevenari Marshall, et al. v. Wyeth, et al.*, CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004)[55], etc.  Additionally, Braden notes, other federal district court judges have ruled on motions to remand; thus, "there is no justifiable reason to wait, indefinitely, a ruling from the Federal District Court in Pennsylvania as to whether Alabama state law provides a basis for colorable claims against the Alabama-resident sales representative Defendants."

Countering Wyeth's argument that the MDL 1203 court is better suited to address the instant jurisdictional issues, plaintiff reiterates statements by Judge Bechtle and Judge Bartle.[56]  Contrary

---

[55]*Marshall*, this court notes, is before this court on a motion to adopt the magistrate judge's recommendation.  The court has considered but not repeated all of the plaintiff's authority.

[56] Braden asserts: "The stance of Judge Bechtle and view of the 11th Circuit fly directly in the face of Defendant Wyeth's current argument – that merely because a MDL exists, all cases should be transferred there.  Blindly accepting this proposition serves only to encourage

34

to Wyeth's assertions, plaintiff argues, there is also a question whether this court has authority to issue a stay without ruling on the remand issue.  Specifically, Braden argues: "Because this Court sits in the 11th Circuit, it is under a duty to examine its own jurisdiction prior to undertaking any formal action." *See Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.")[57] According to Braden, if the court finds a lack of subject matter jurisdiction, it

defendants, such as Wyeth, to 'dump' all filed cases in a MDL where there is little chance of a quick return to a local federal or state court for trial.  Should this court accept Wyeth's position, it would be playing directly into Defendant Wyeth's strategy to delay these diet drug cases at all costs."

[57] In *University of South Alabama v. American Tobacco Company*, the court held that because the district court lacked subject matter jurisdiction before it turned its attention to the Attorney General's notice of dismissal under Federal Rule 41(a)(1), it "improvidently reached a complex question of substantive state law – whether the Attorney General had the power to manage and control complex litigation commenced by the University."

The Eleventh Circuit further stated:

> In the instant case, however, the Attorney General's Notice of Dismissal demanded more than a perfunctory voluntary dismissal analysis. Rather, the notice necessarily required the district court to determine a complex substantive issue of Alabama law. Because the Alabama Attorney General was neither a named plaintiff, nor counsel of record, it was by no means clear that the proper plaintiff had filed a Notice of Dismissal in this proceeding--particularly where the University vigorously contested the Attorney General's power to speak for the plaintiff. Therefore, in order to determine whether the Attorney General's notice satisfied the requirements of Rule 41(a)(1), the district court first had to determine that the University was an agency of the state, that the University was subject to the authority of the Attorney General to control all litigation in the state, and, hence, that the Attorney General had the authority to file a Notice of Dismissal. Plainly, these were substantive rulings concerning Alabama law, albeit unusual in a Rule 41(a)(1) context, that the district court had no authority to make without first determining whether it had subject matter jurisdiction to hear the case. Accordingly, because of the unusual circumstances of the instant case, we conclude that the district court erred in failing to consider Appellant's Motion to Remand for lack of subject matter jurisdiction before it addressed the Attorney General's Notice of Dismissal.

cannot take the action of issuing a stay as requested by Wyeth.  Braden relies upon *Stern v. Mutual Life Insurance Company*, 968 F. Supp. 637, 639 (N.D. Ala. 1997)[58] and *U.S. v. Hays*, 515 U.S. 737, 742-44 (1995).  Pursuant to *Crowe*, Braden argues, a district court's authority on remand consideration is limited to checking for obviously fraudulent or frivolous claims.

## III.   Defendant's Reply[59]

While confirming that Judges Johnson and Proctor have rescinded their stay orders in certain diet drug cases, *see supra*, Wyeth argues that such decisions were "misguided because of these judges' apparent belief that the JPML encourages transferor judges to rule on all pending motions to remand."  Wyeth continues: "The standard form letter sent to transferor judges encourages them to rule on pending motions to remand 'unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there.'  The situation here clearly falls into the latter category."  In contrast to these remand orders, Wyeth again notes, Wyeth's motions to stay were granted in the following cases: *Jean Hartzog, et*

---

[58] In *Stern,* this court notes, defendants argued that the supplemental jurisdictional statute provided the necessary jurisdictional basis for removal though faced with a lack of complete diversity.  *Stern* did not apparently entail fraudulent joinder issues.  The *Stern* court stated:

> Because the action is clearly due to be remanded for want of jurisdiction, the court can conceive of no reason to stay proceedings so as to allow another district court to rule on the motion to remand.  If the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay.  It is incumbent upon a court whose subject matter jurisdiction is questioned to make a determination as to whether it has, or does not have, jurisdiction over the action.  This determination involves no issues that the putative transferee court in the multi-district action would be uniquely qualified to address.  Therefore, defendants' request for a stay of proceedings should be denied.

[59] This court has also considered Wyeth's "Additional Reply to Plaintiffs' Opposition to Motion to Stay," filed on March 19, 2004, but does not restate arguments and case law discussed previously.

*al. v. Wyeth, et al.*, CV-04-F-67-N (Feb. 20, 2004); *David Connor, et al., v. Wyeth, et al.*, CV-04-F-69 (Feb. 20, 2004); etc.[60]  *See* Def. Ex. B.  Additionally, Wyeth quotes *Betty Hagler, et al v. Wyeth, et al.*, CV-04-A-11-N (M.D. Ala. Feb. 23, 2004):

> There is similarity in issues involved in remand motions in these cases nationwide, i.e., whether sales representatives and other individual resident defendants have been fraudulently joined to avoid federal jurisdiction.  This court recognizes its authority to consider and rule on a Motion to Remand at any time before a final transfer, but finds it to be more appropriate to await a determination by the MDL Panel in regard to transfer.  A transfer to the MDL Court does not result in a denial of a motion to remand; it simply leaves the motion for determination by the MDL judge.  Because of the similarity of these issues nationally, and in the interests of uniformity and judicial economy, this court finds that the remand motion is best left for consideration and determination by the judge who is considering the same issues on a nationwide basis, in the event the case is ordered transferred.

Moreover, Wyeth contends, *Crowe* does not support plaintiff's contention that the conflict between the sales representatives' affidavits and the unverified complaint mandates remand.  *Crowe* involved a plaintiff's <u>verified</u> complaint, i.e., the equivalent of an affidavit, and the *Crowe* court noted that the plaintiffs' complaint was "verified" and "under oath."  Wyeth also quotes *Crowe* as follows: "Coleman's affidavit and plaintiff's sworn complaint seem to leave open – as completely disputed – whether gasoline from Coleman's land (after he became the landowner) has intruded, and continues to intrude, onto Plaintiffs' land."  *See* 113 F.3d at 1541.  On the other hand, Wyeth notes, plaintiff has submitted no sworn statements or other evidence to refute defendants' affidavits regarding the sales representatives' roles, Cherry's and Lavender's mere conveyance of information that Wyeth provided to them, and Cherry's and Lavender's denial of information about any alleged

---

[60] The court considers but does not recite this string of citations.

37

association between Pondimin/Redux and VHD until the information became publicized.[61] Furthermore, Wyeth argues: "[P]laintiff makes no effort to describe in the complaint what the sales representatives supposedly misrepresented about Pondimin and/or Redux and when such misrepresentations were made. Even if plaintiff's bare bones allegations – that all defendants misrepresented and/or concealed that diet drugs were safe and effective – are somehow sufficient under Rule 9, plaintiff makes no allegations that the defendant sales representatives knew that such representations were false."

Furthermore, Wyeth argues, the current MDL judge welcomes transfer. The cited hearing before Judge Bechtle, Wyeth contends, was nearly six years ago. After Judge Bechtle made those remarks, Wyeth observes, both Judge Bechtle and Judge Bartle "regularly considered and ruled upon motions to remand transferred with cases to the MDL court." In fact, Wyeth asserts, in a recent remand hearing Judge Bartle recognized the reasonableness of a federal judge saying, "Well, we will give the MDL Judge who has may have (*sic*) the big picture the first opportunity" to address fraudulent joinder. *See* Def. Ex. B. In the July 16, 2002 hearing relied upon by plaintiff, Wyeth asserts, Judge Bartle further stated: "I mean, maybe it makes a lot of sense for the MDL Court to take a first crack at [fraudulent joinder], just to see what it is, or at least to pass upon it and decide whether it should go back to the federal court in a particular state." *See* Pl. Ex. C. In 2002, Wyeth notes, the MDL court denied plaintiffs' motions to remand, recognizing the pervasive nature of fraudulent joinder nationwide and deeming plaintiffs' action "as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal

---

[61] *See supra* Cherry's, Lavender's, and Matlock's affidavits.

forum." *See* Pl. Ex. D.

According to Wyeth, the MDL recognizes it is the best forum to resolve removal issues such

as in the instant case.  On August 25, 2003, the MDL court in PTO 2984 stated:

> [R]ecurrent issues have continued to emerge in connection with motions
> to remand to state courts cases removed by Wyeth on the basis of diversity of
> citizenship.  We have now developed a broader perspective than is usually
> available to individual transfer courts in dealing with widespread efforts
> fraudulently to join Phentermine manufacturers as a tactic to thwart removal
> of cases to the federal courts.  Likewise, we are continuing to address the
> fraudulent joinder of individual physicians and pharmacies as defendants
> as a means to prevent removal.  Many of these issues have common patterns
> as well as ramifications far beyond any specific case.  Again, we believe these
> issues are best resolved in a uniform manner through the coordinated
> proceedings of MDL 1203.

*See* Def. Ex. E.  In PTO 2984, the MDL court denied motions to remand by certain class members,

in part based on the MDL court's perception that it was best-situated to address and redress

fraudulent joinder claims.  Further, Wyeth contends:

> It is Wyeth's understanding that Judge Bartle has hired an additional law
> clerk for the specific purpose of assisting him with motions to remand of this
> type.  Because of the large number of remand motions being filed or renewed
> in MDL 1203 presenting the same issues, Judge Bartle is able to decide
> those motions on a consolidated basis.  Attached is one decision, rendered
> in February 2004, in 12 separate actions on behalf of 256 plaintiffs
> represented by the same counsel.  See Exhibit F hereto.

> Moreover, Judge Bartle has the assistance of a Special Master, and
> his entire law firm, who helps, among other things, in coordinating the
> resolution of remand motions.  Judge Bartle is now setting up specific
> procedures, with the help of the Special Master, to deal with remand motions
> in cases transferred to him.  See MDL 1203 Status Conference Agenda for
> March 10, 2004, with draft pretrial order, attached hereto as Exhibit G.

Fraudulent joinder issues regarding sales representatives, defendant repeats, will recur

nationwide.  According to Wyeth, the MDL court is familiar not only with the underlying facts of

the case but also with the broader context in which the specific issues arise, "such as facts relating

to Pondimin and Redux, when they were available for prescription, and the role of Wyeth's sales representatives with regard to those drugs, all of which have been litigated before him extensively."

Finally, Wyeth asserts, transfer to the MDL does not delay the Braden case. Such a notion, Wyeth contends, has been rejected in hundreds of cases transferred by the JPML. Wyeth holds out *Rainey v. Wyeth* as a "clear example of why plaintiff's motion to remand must be rejected here." *Rainey* was filed by the same plaintiffs' firm in Jefferson County Circuit Court. Wyeth removed the action to the Northern District of Alabama, asserting the running of the statute of limitations and fraudulent joinder of the sales representatives. In *Rainey*, Wyeth also submitted affidavits from the sales representatives to the effect that they had never promoted Pondimin (the diet drug Rainey used) and that the prescribing physician was not among the physicians on their route. Plaintiff neither argued to the contrary nor provided evidence refuting those affidavits. Plaintiff moved to remand, seeking an emergency ruling in the local district court. The federal district court did not act on those motions, and the JPML conditionally transferred *Rainey* to the diet drug MDL proceedings in Philadelphia. On January 24, 2003, plaintiff's attorney filed an opposition to transfer, arguing that the federal courts did not have jurisdiction to effectuate such a transfer and that Wyeth's removal notice was "improper, improvident, deficient, and baseless." However, on April 14, 2003, defendant alleges, the JPML rejected that opposition and transferred to the MDL, stating: "We note that any motions to remand to state court can be presented to and decided by the transferee court. On April 24, 2003, plaintiff's counsel filed a remand motion before Judge Bartle, who acted on that motion by denying remand. Judge Bartle found that the statute of limitations had run and that plaintiff had fraudulently joined the doctor. Addressing fraudulent joinder of sales representatives, Judge Bartle found:

> We note first that there is no indication in the complaint that the plaintiff, or the plaintiff's physician Dr. Franco, received any drugs from the sales representative defendants.  In fact, according to an uncontested affidavit submitted by . . . the Zone Vice President of Wyeth's Southern Business Unit, no Wyeth sales representative ever promoted Pondimin.  Additional affidavits submitted by eight of the nine sales representative defendants further confirm that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied or tested Pondimin, or trained anyone to do so, nor did they call or meet with Dr. Franco.  Since Alabama law only holds corporate employees liable for wrongful actions in which they personally participate, plaintiff has no colorable claim against the sales representatives . . . .  In fact, in the complaint, plaintiff barely discusses the sales representatives except generally to aver their involvement in marketing and promoting Pondimin.  In her brief in support of the motion to remand, she does not even mention them.
>
> Plaintiff has not provided a scintilla of evidence that the sales representative either promoted Pondimin generally or specifically to the prescribing physician.  Since she has no colorable claim against them, we therefore find that they too were fraudulently joined.

*See* Def. Ex. I.  Thus, Wyeth urges, *Rainey* demonstrates that the MDL court has the background and context for assessing the instant remand motion.

In Wyeth's "Additional Reply," defendant characterizes as "wrongly decided" the recent remand orders issued by judges in the Northern District of Alabama.  Wyeth contends that such orders track the February 18, 2004 opinion of Judge Putnam in *Marshall v. Wyeth*,[62] in which the court found defendant sales representatives not to be fraudulently joined.[63]  *Marshall*, Wyeth argues,

---

[62] Wyeth notes its appeal in *Marshall* as well as in two other remand recommendations by Judge Putnam in *McGowan v. Wyeth* and *Juanita Johnson v. Wyeth*.

[63] The *Marshall* court reasoned:

> In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Owen, in the form negligent fraud claims (*sic*).  To state such a possible claim, the plaintiffs need only allege that Lavender and Owens misrepresented certain material facts about the risks associated with use of Pondimin and Redux and that plaintiffs,

misapplied the doctrine of innocent misrepresentation in a corporate setting.[64]   The alleged

misrepresentation here, Wyeth avers, was the failure of a salesperson to disclose an association

between VHD and the diet drugs.   A corporation can only act through its employees, as

demonstrated by the rule that an employee cannot legally conspire with his employer. *See Phillips*

*v. Amoco Oil Co.*, 614 F. Supp. 694, 703 n. 10 (N.D. Ala. 1985).  Wyeth argues: "Wyeth then can

---

through their physicians, reasonably relied upon such misrepresentations.  It is
unimportant that Lavender and Owen did not know of the risks and,
therefore, did not *intentionally* misrepresent the risks associated with these drugs.
Alabama law recognizes an action for innocent or negligent misrepresentation as
well as for reckless and intentional misrepresentations.  For example, the
Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended
> misrepresentation.  The good faith of a party in making what proves to be
> a material misrepresentation is immaterial as to whether there was an
> actionable fraud. *Smith v. Reynolds Metals Co.*, 497 So. 2d 93 (Ala.
> 1986).  Under the statute, even though a misrepresentation be made by
> mistake and innocent of any intent to deceive, if it is a material fact and is
> acted upon with belief in its truth by the one to whom it is made, it may
> constitute legal fraud. *Mid-State Homes, Inc. v. Startley*,
> 366 So. 2d 734 (Ala. Civ. App. 1979).

*Goggans v. Realty Sales & Mortgage*, 675 So. 2d 441, 443 (Ala. Civ. App. 1996);
*see also Cain v. Saunders*, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Owen did not know of the
PPH and valvular heart disease risks associated with these drugs, and therefore,
did not recklessly or intentionally misstate what *they* knew, their innocent
misrepresentations, at least as alleged by the complaint, understating the risks
constitute a "possible" cause of action in Alabama.  As long as it is possible that a
state court may find that the complaint states a claim against the non-diverse
defendant, even if it is a claim with poor prospects of ultimate success, the
non-diverse defendant has not been fraudulently joined and the case must be
remanded for lack of proper diversity jurisdiction.

[64] As Braden is an intermediate and/or back end opt out from the National Diet Drug
Class Action Settlement, Wyeth asserts, the only injury for which she can sue is VHD.

be liable for the acts of its employees, but employees cannot be liable for the wrongful acts of other employees without participating in the wrong."[65]  The recent remand orders by the Northern District of Alabama, Wyeth contends, effectively hold a corporate employee strictly liable, "even if he did nothing more than hand to the doctor the printed materials prepared by Wyeth and approved by the Food and Drug Administration, which had found these drugs safe only shortly before the representative's visit to the prescribing physician.  Neither the courts nor plaintiffs have cited any case applying such corporate employee strict liability (for innocent fraud) in the almost 100 years since the innocent misrepresentation concept has been adopted in Alabama."

According to Wyeth, Alabama law does not impose innocent misrepresentation liability on a mere transmitter of information, absent knowledge by the messenger by the information is faulty. *See, e.g., Fisher v. Comer Plantation, Inc.*, 772 So. 2d 445, 463 (Ala. 2000)(recognizing that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be liable for fraud unless they acted in bad faith");[66] *Speigner v. Howard*, 502 So. 2d 367

---

[65] Again, Wyeth cites *Devise, Bowman, Mills v. Wex-Tex.*

[66] *Fisher* affirmed summary judgment in favor of a real estate agent who passed along faulty information to a purchaser.  Specifically, the *Fisher* court stated:

> [In *Speigner*], [w]e held that the defendants were not liable for fraud "for merely conveying the statements of [the seller] to the agent of the [plaintiffs]" without evidence of bad faith. Id. at 371 (emphasis omitted).  In the present case, the faulty information was supplied by Pugh, who prepared the appraisal report that contained the alleged misrepresentations. No evidence in the record suggests that Thomas or Locators retained the right to direct the manner in which Pugh prepared the appraisal; thus, in making it, Pugh was acting as an independent contractor. See generally Fuller v. Tractor & Equip. Co., 545 So.2d 757, 758-59 (Ala.1989) (discussing what makes one an independent contractor). The report was received from Pugh by Thomas, who was acting in an arm's-length relationship with Pugh. Thomas was a part-owner of Comer Plantation; he passed the report on to Locators, a real-estate agency he owned. Speaks, as an employee

43

(Ala. 1987)(finding real estate agent and her employer not liable in fraud for "merely conveying the statements of their principal to the agent of the [purchasers], there being no evidence of bad faith on her part")(citing *Estes v. Crowby*, 171 Wis. 73, 175 N.W. 933, 8 A.L.R. 1377 (1920)).

Moreover, Wyeth contends, Cherry and Lavender cannot be held liable for suppression of information that diet drugs caused VHD, since a suppression claim requires "actual knowledge of the fact and its materiality." *See Hardy v. Blue Cross & Blue Shield*, 585 So. 2d 29, 32 (Ala. 1991)(citations omitted).[67] *See also Univ. Fed. Credit Union v. Grayson*, 2003 WL 22221231 at *5 (Ala. 2003)(same). The defendant sales representatives' affidavits, Wyeth reasserts, have not been refuted as to their lack of knowledge about a link between VHD and Pondimin and/or Redux. In urging this court to consider those affidavits, Wyeth again relies upon *Crowe*.[68]

---

> of Locators, ultimately received the report and relayed its contents on to Fisher; its contents included an attestation of accuracy. We can find no evidence in the record indicating that Speaks, Locators, or Thomas acted in bad faith. Therefore, under the authority of Speigner, we conclude that the trial court correctly entered the summary judgment as to Fisher's claims against Speaks and Thomas, because they were conduits passing information supplied by Pugh. Because the liability of Locators and the owners is premised on the liability of Speaks, an agent of Locators, we likewise conclude that the summary judgment was proper as to the claims against them. As to the fraudulent-misrepresentation claims against Speaks, Locators, and the owners, the summary judgment is affirmed.

[67] *Hardy* sets out the elements of a fraudulent suppression claim as follows: (1) defendant's duty to disclose; (2) defendant's suppression of an existing, material fact; (3) defendant's actual knowledge of the fact and its materiality; (4) plaintiff's lack of knowledge as inducing her to act; (5) actual damage to plaintiff as a result.

[68] This court fully quotes the relevant section of *Crowe*:

> The burden of the removing party is a "heavy one." B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).
>
> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and

## CONCLUSIONS OF THE COURT

This court starts with the fact that it is certainly bound by Eleventh Circuit law.[69]  On the other hand, the special knowledge of the MDL would aid in the resolution of issues in this case. That court would certainly have a special familiarity with the timing of acquired knowledge by sales representatives and others with reference to Pondimin and Redux, the interrelationship between Pondimin and Redux, etc.. Insofar as Alabama law is concerned, what this court has recounted above should be helpful to the MDL. This court agrees with the language in *Hagler, et al. v Wyeth*, quoted above on page 37. This court will stay for forty (40) days its consideration of the motion to remand. If the MDL has not ruled on the motion to remand within that time, and this court still has jurisdiction of the case, this court will rule on the motion within five (5) days thereafter. The

---

must resolve any uncertainties about state substantive law in favor of the plaintiff. Id. at 549. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties. Id.

While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," id. at n. 9, the jurisdictional inquiry "must not subsume substantive determination." Id. at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993).

[69] This court cannot totally fathom the distinction between "possible" and "reasonably possible."  If something is not reasonably possible can it be unreasonably possible?

plaintiff will notify the court of any failure to rule by the MDL within said time frame if this court

still has jurisdiction.  If this court rules, its ruling is likely to be consistent with the multitude of

district court rulings in Alabama.

This ⟍⟋ of April, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE