IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JIMMIE BRADEN

       Plaintiff,

v.                                          CV 04-PT-235-E

WYETH, a corporation;
ANTHONY L. CHERRY;
BEN E. LAVENDER, JR.

       Defendants.

## MEMORANDUM OPINION

Plaintiffs argue that the court has a "duty to examine its own jurisdiction prior to undertaking any formal action." The court assumes that ruling on a motion to remand constitutes a "formal action." Further, examining its jurisdiction is exactly what this court has been doing. The Eleventh Circuit has also held that this court has an "unflagging" duty to retain jurisdiction where it has it. That presumably means that the court should not simply count other district court rulings.

This case represents the usual tension between what has been called this court's "unflagging" duty to exercise its jurisdiction when present[1] and the admonishments against accepting diversity jurisdiction when there are "possible" claims against non-diverse defendants. The difficulty of resolving such tension is exacerbated by the effort of each side to stretch every possible nuance from every possible case. One would think that the difference might be whether

---

[1] *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 2004 WL 1300156 (11th Cir. 2004)(*quoting Colorado River Water Conservation Dist. v. U.S.*, 965 S. Ct. 1236 (1976)).

a party will remain on death row or be freed to return to the idyllic confines of a country home.

A further feature of this dilemma is the fact that the issue is supposed to be decided based upon objective standards but is usually influenced by the deciding courts' subjective leanings. It is tempting to quickly dispose of a case on a non-appealable basis.

Surely, as always, this court must look for some solution which does not lend itself to either arbitrariness or capriciousness. The court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility toward diversity jurisdiction, the mere naming of purely adjunct parties is <u>not</u> sufficient in and of itself to defeat jurisdiction. With these thoughts and the admonitions of controlling courts in mind, this court will attempt to resolve the issues here.

This case is not as cut and dried as either side would suggest. In this court's opinion the real issue is whether the named non-diverse defendants knowingly (that is, with knowledge of the alleged defects), personally marketed the drug(s) to a plaintiff consumer or to a plaintiff consumer's physician. While the *Wall* case is not totally apt, it likely stands for the proposition that there can be no proximate cause if the said defendants merely market the products to pharmacists, because a pharmacist has no choice but to fill the prescriptions of the physician.

A crucial factor in this case is when the non-diverse defendants knew that the products were defective and whether, thereafter, they personally and affirmatively marketed the defective drugs to a plaintiff or the plaintiff's physician. It stands to reason that a court to which a large number of these cases have been transferred should be in a better position to make uniform decisions with regard to this issue. Thus, this court's part delay.

Everyone knows that plaintiffs add marginal defendants to avoid removal from state courts. Everyone knows that the removing defendants feel just as strongly about wanting federal jurisdiction. These competing motives do not lend themselves to straightforward arguments. This court abhors game playing on either side. The time has come, however, for the court to make a decision, right or wrong.

The Eleventh Circuit has indicated that district courts must "inquire" into removal jurisdiction. *Univ. of South Ala. v. American Tobacco*, 168 F.3d 405, 410 (11th Cir. 1999). This court assumes that does not mean that the court should make a rush to judgment without the facts. How can a court possibly know whether an allegation in a complaint has been fraudulently made without some knowledge of the facts? If an allegation is made that defendant A ran a red light in Anniston, Alabama on May 1, 2004, and the evidence overwhelmingly shows that A was in New York for the whole day of May 1, 2004, would the district court have to accept the allegation in the complaint and simply say that the dispute is for the state court to determine? *See Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997).

The parties have not cited any directly applicable Alabama or controlling federal court cases. This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against a representative unless there is evidence that he or she personally and actively sold or promoted the alleged product to applicable plaintiffs or their physicians after he or she had knowledge that the product was dangerous or defective or after he or she had knowledge that warnings had not been otherwise appropriately given. Here, there is no such allegation and certainly no substantial evidence to rebut evidence to the contrary.

3

This court is at least partially persuaded by the *Rezulin* and *Baycol* cases. Those courts perhaps go further than this court would go in that they may exclude claims against even knowledgeable sales representatives. While those are likely correctly holdings with regard to AEMLD claims, they may not be appropriate for failure to warn, intentional misrepresentation or suppression claims. Here, however, there is no substantial evidence to rebut the allegations to the contrary.

The court will allow the plaintiffs ninety (90) days for discovery on these issues:

(1) When and how did a named diverse defendant learn that a pertinent drug was defective and should not be marketed?

(2) When and how did that named diverse defendant thereafter personally market or promote the defective drug to a named plaintiff or the physician of a named plaintiff?

(3) Any other information pertinent to establishing that named a non-diverse defendant personally marketed or promoted the defective products to a plaintiff or the plaintiff's physician after having knowledge of a defect.

At the conclusion of said discovery, the plaintiffs will notify the court and the court will thereafter issue order(s) calling for a consideration of said evidence upon which this court will rule.[2]

The court notes that said discovery will avail the plaintiffs in their pursuit of the non-diverse defendants in state court if the cases(s) are remanded. Further, the plaintiffs may advise the MDL that this court will take the motion to remand under advisement after said discovery.

---

[2] The discovery need not take the full ninety (90) days.

4

This the 30TH day of June, 2004.

*Robert B. Propst*
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

06/30/04  WED 07:26  [TX/RX NO 8013]  ☒005

06/30/04  WED 07:06  [TX/RX NO 7017]  ☒005